**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAJAR MUHAMMAD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MATRIX MEDICAL NETWORK, | : | No. 20-2244 |
| Defendant. | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                **September 27, 2021**

Hajar Muhammad worked as a nurse practitioner for Matrix Medical Network ("Matrix") for a little less than a year. While working for Matrix, Muhammad experienced some medical issues that necessitated accommodations and a leave of absence from work, to which Matrix acceded. Muhammad was cleared to return to work in March of 2019. Prior to that return, Muhammad was removed from her position as an employee and moved into an independent contractor position. She claims that Matrix's conduct violated the Americans With Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") and that Matrix failed to reasonably accommodate her disability. Presently before the Court is Matrix's motion for summary judgment. Because the Court concludes that Muhammad was not disabled at the relevant time, the Court will grant the motion. Moreover, the Court will also grant summary judgment in favor of Matrix on Muhammad's workers' compensation retaliation claim.

## I.     FACTUAL BACKGROUND

Matrix offers care and health services to people in their homes and in their workplaces. (Def.'s Statement of Undisputed Facts ¶ 1.) Matrix "uses approximately 3400 Nurse Practitioners and other health care providers to visit health plan members in their homes and nursing facilities

nationwide." (*Id*. ¶ 3.) Matrix has full and part time employees, as well as Flex Providers, who are independent contractors. (*Id*. ¶ 5.) Flex Providers, who must be properly credentialed, may set their own work schedules. (*Id*. ¶¶ 6-7, 9.)

Matrix hired Muhammad on June 4, 2018, as a Nurse Practitioner 2. (*Id*. ¶ 10.) In that position, she performed health risk assessments and screening procedures, and referred members to primary care physicians, as well as to disease management programs. (*Id*. ¶¶ 12-13.) Muhammad reported to Nita Heck, the Manager of Clinical Service for the Middle Atlantic, and Vicki Beal, Clinical Services Manager. (*Id*. ¶ 15.)

On November 29, 2018, Muhammad hurt her back when she slipped and fell while unloading her car. (*Id*. ¶ 16.) Her doctor diagnosed her with a sprain of the ligaments of her lumbar spine and scheduled a follow-up appointment for December 5, 2018. (*Id*. ¶ 17.) On December 3, 2018, Muhammad submitted a request for workers' compensation leave, which Matrix granted. (*Id*. ¶ 18.) On December 5, 2018, Muhammad's doctor prescribed her physical therapy and scheduled another follow-up appointment for December 10, 2018. (*Id*. ¶ 19.) On December 10, 2018, Muhammad's doctor restricted her from lifting more than ten pounds, squatting, climbing, reaching, or standing for more than two hours. (*Id*. ¶ 21.) On December 21, 2018, she visited the Rothman Institute, and she was released to return to work on modified duty. (*Id*. ¶ 22.) Specifically, she was not allowed to sit for longer than thirty minutes without breaks. (*Id*.) Muhammad returned to work on December 26, 2018. (*Id*. ¶ 23.)

On January 15, 2019, Muhammad submitted a leave of absence request to Matrix, seeking personal leave from January 30, 2019 through March 4, 2019, so she could undergo pelvic floor surgery. (*Id*. ¶ 24.) This request was granted, and Muhammad began her leave on January 30, 2019. (*Id*. ¶ 25.) On February 28, 2019, Muhammad forwarded a letter from her doctor stating that on

March 12, 2019, Muhammad could return to work without restrictions. (*Id*. ¶ 27.) Accordingly, Matrix extended her leave through March 11, 2019. (*Id*. ¶ 28.)

On March 12, 2019, Matrix transferred Muhammad from full-time employee to Flex Provider. (*Id*. ¶ 37.) The story of Muhammad's transfer to a flex position is hotly disputed, though ultimately that dispute is not material. On March 3, 2019, Muhammad texted Beal about possibly returning as a Flex Provider as her back issues led her to question whether returning to work full time was a smart decision. (*Id*. ¶ 29.) Though Muhammad admits to discussing the flex position, she contends that she was never informed that accepting that position would make her an independent contractor. (Pl.'s Opp'n to Def.'s Statement of Facts in Support of Her Opp'n to Def.'s Mot. for Summ. J. [Pl.'s Statement of Facts] ¶ 29.) According to Matrix, Muhammad shortly thereafter accepted a flex position. (Def.'s Statement of Undisputed Facts ¶ 32.) Muhammad denies that she accepted the flex position; rather, she contends that she merely discussed the position with Matrix's Clinical Program Manager. (*See* Def.'s Statement of Undisputed Facts ¶ 32; Pl.'s Statement of Facts ¶¶ 32, 34.) The record includes an email dated March 5, 2019 from Michelle O'Nale, who worked in human resources for Matrix, to Muhammad. According to this email, O'Nale stated that Muhammad had resigned from her full-time position to take a flex position, effective March 12, 2019. (Def.'s Mot. for Summ. J. Ex. S [Mar. 5, 2019 O'Nale email].) Muhammad questions the authenticity of this email, asserting that it, "not only looks strange, but also Plaintiff testified that she never received or reviewed the email." (Pl.'s Statement of Facts ¶¶ 32-33.)

On March 12, 2019, a human resources representative from Matrix emailed Muhammad, informing her that because Flex Providers were considered independent contractors, Muhammad was "no longer considered an employee of Matrix Medical Network" and she would be required

to return a signing bonus she received when she was originally hired. (Def.'s Mot. for Summ. J. Ex. X [Mar. 12, 2019 O'Nale email].) Muhammad responded that "[n]o one ever explained to me that going flex would force me to resign and also that I would have to pay back the bonus money. No one ever explained that I would no longer be an employee of Matrix by being flex. This all happened so fast which concerns me that there was a hidden agenda. I never formally resigned so I would like to continue as a full time employee. Please email back to confirm." (*Id.*) Ultimately, Matrix did not require Muhammad to return her bonus. (Def.'s Undisputed Statement of Facts ¶ 39.)

According to Matrix, it needed credentialing paperwork from Muhammad so that she could begin working as a Flex Provider. (*Id.* ¶ 41.) Despite multiple attempts to obtain the necessary credentialing paperwork from Muhammad, she failed to complete or submit the paperwork. (*Id.* ¶¶ 36, 40, 42.) "Accordingly, Matrix Medical deemed Muhammad to have abandoned the Flex position, effective March 12, 2019." (*Id.* ¶ 43.) Muhammad contests that her paperwork was deficient, claiming that the initial credentialing paperwork was sent to an email which she could no longer access. (Pl.'s Statement of Facts ¶ 40.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a

reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.   DISCUSSION

According to Muhammad, Matrix failed to accommodate her disability, and "failed to meaningfully engage in the interactive process towards the development of reasonable accommodation for Plaintiff's disability." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. [Pl.'s Mem.] at 2.) She claims that rather than work with her to accommodate her disability, Matrix wrongfully terminated her while on disability leave because she transferred from a full-time position to a flex position, which rendered her an independent contractor without medical benefits or guaranteed hours. (*Id.*) Matrix denies these claims and asserts that Muhammad has failed to state a prima facie case for discrimination. Matrix also asserts that Muhammad failed to provide evidence of a necessary causal connection for her workers' compensation retaliation claim.

The Court will grant Matrix's motion for summary judgment because Muhammad was not disabled at the time of her termination. Moreover, prior to that time, she had been granted all of the accommodation requests she sought from Matrix. Finally, the Court agrees that Muhammad has failed to provide evidence of the necessary causal connection for her workers' compensation retaliation claim.

A.      Was Muhammad Disabled Under the ADA?

The parties dispute whether Muhammad was disabled under the terms of the ADA. Matrix argues that Muhammad's medical troubles were a temporary condition that required treatment, but that her medical condition was not a disability necessitating a reasonable accommodation. According to Matrix, "[a] short-term bladder problem that is fully resolved by surgery is an illness, not a disability." (Def.'s Br. in Support of Its Mot. for Summ. J. [Def.'s Br.] at 8.) Muhammad claims that as a result of her pelvic floor surgery, she falls within the terms of the definition of disabled. (Pl.'s Mem. of Law in Opp'n to the Def.'s Mot. for Summ. J. [Pl.'s Opp'n] at 7.) Muhammad noted that her bladder and back problems were worsening because she often was unable to relieve herself due to the extensive driving required by her work schedule. (Pl.'s Opp'n Ex. B. [Muhammad Dep.] at 46-50.) She described her condition and noted that there were times when she had an accident on the way to a patient's house. (*Id*. at 72-73.)

Muhammad's disability discrimination claim is reviewed under the familiar *McDonnell Douglas* burden-shifting framework. *See Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 626 (E.D. Pa. 2017). Thus, Muhammad must first establish a prime facie case for discrimination. *See id*. For Muhammad to state a prima facie case for discrimination, she must show that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (3) she has suffered an otherwise adverse employment action as a result of discrimination. *Id*. (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). If she does, the burden shifts to Matrix to articulate a legitimate nondiscriminatory reason for the adverse action. If Matrix can do so, the burden of production against shifts to Muhammad, for her to demonstrate that the

articulated reason was mere pretext for discrimination. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997).

Under the ADA, a "disability" is: "(1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The statute further includes in its definition of major life activities "major bodily function[s], including . . . functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

Without question, at one point in time during her employment with Matrix, Muhammad suffered from a condition that constituted a disability under the ADA. Indeed, Matrix granted her time from work to recover from her surgery. The Court, however, must consider whether Muhammad was disabled at the time of the adverse action. She cannot reach a jury on her ADA claim by merely pointing out that she was disabled during the time of her employment at Matrix.

Indeed, the problem with Muhammad's argument is that it relies on her condition prior to the pelvic floor surgery. Prior to the surgery, her doctor noted that she would be unable to work "during the 4 week post-operative period" but that she would be "able to return to work without restrictions on March 4, 2019." (Def.'s Mot. for Summ. J. Ex. N [Jan. 14, 2019 Dr. Andy Ltr.]. This time period was briefly extended, but her doctor again noted that Muhammad could return to work "without any restrictions" on March 12, 2019, following a post-operative visit with her doctor. (Def.'s Mot. for Summ. J. Ex. Q [Feb. 28, 2019 Dr. Andy Ltr.].) She was therefore granted

leave to recuperate from surgery. But there is no evidence in the record that she continued to be disabled after her doctor okayed her to return to work without restrictions.

The Court does not dimmish Muhammad's medical condition or the troubles that her conditions caused her. But the record upon which she relies demonstrates that at the time of the adverse action—and that is the relevant timeframe for this Court— she has failed to raise a genuine issue as to her disability status. *See Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 591 (E.D. Pa. 2019) ("We measure disability at the time the adverse action occurred."). While Muhammad may have been disabled prior to her surgery and for a period after her surgery, she does not include any evidence that she remained disabled following her recovery period. *See id*. at 592 (concluding no genuine issue of material fact on the issue of disability existed when doctor cleared plaintiff for "full duty" work, "with no restrictions and no prescribed medications or additional treatments"). Rather, this appears to be a situation in which Muhammad was suffering from several months of limitations, without long-term or permanent effect. *See Kocher v. Municipality of Kingston*, 400 F. Supp. 3d 138, 158-59 (M.D. Pa. 2019). Moreover, she has failed to include any medical documentation that she was disabled at the time of the adverse action. *See Parrotta*, 363 F. Supp. 3d at 593 ("But importantly, a plaintiff cannot establish disability relying solely on his own testimony without any medical documentation of his impairment at the time of the adverse action.").

The Court does not endorse Defendant's behavior. Indeed, it is possible that Muhammad was misled into accepting a flex position and then forced to maintain that position after she learned about the bait and switch and tried to change her mind. But this Court does not sit in judgment of the decisions of an employer absent a purported violation of the law or the Defendant's legal obligations. *See Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question

is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].") Moreover, the dispute over Muhammad's role at Matrix is not material because she was not disabled at the time. Here, Muhammad claims that she suffered an adverse action because of a disability. But the record is devoid of evidence that she was disabled within the meaning of the statute at the time of the adverse action. Therefore, the Court will grant summary judgment on Muhammad's discrimination claims.[1]

## B.    Muhammad's Accommodation Claim

According to Plaintiff, Matrix failed to accommodate her disability and "failed to meaningfully engage in the interactive process towards the development of a reasonable accommodation for Plaintiff's disability." (Pl.'s Mem. at 2.)

A plaintiff bringing a failure to accommodate claim must establish: (1) she was disabled, and her employer knew about the disability; (2) she requested an accommodation or assistance; (3) the employer failed to make a good faith effort to assist; and (4) she could have been reasonably accommodated. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

As discussed previously, Muhammad was no longer disabled at the time she went from being an employee to a flex provider. Additionally, Matrix had accommodated Muhammad previously. Matrix granted Muhammad's request for leave in December of 2018, and a subsequent leave request in January of 2019. The record thus demonstrates that Matrix accommodated Muhammad when she was disabled, but at the time of her termination, she was not disabled. Her accommodation claim must therefore fail.

---

[1] Pennsylvania courts generally interpret ADA and PHRA claims identically. *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002); *see also Harner v. Graphic Packaging Int'l, Inc.*, Civ. A. No. 19-5031, 2021 WL 1518618 (E.D. Pa. Apr. 16, 2021) (granting summary judgment on PHRA claim because plaintiff failed to raise a genuine issue of material fact as to disability under more lenient federal statute).

### C.   Muhammad's Workers' Compensation Retaliation Claim

Muhammad also claims that she was retaliated against for filing a workers' compensation claim in December of 2018. The Court will grant Matrix's motion for summary judgment on this claim as well.

As the parties note, a workers' compensation retaliation claim is analyzed under the standards employed to adjudicate Title VII retaliatory discharge claims. *See, e.g.*, *Kieffer v. CPR Restoration & Cleaning Serv., LLC*, 200 F. Supp. 3d 520, 539 (E.D. Pa. 2016). Accordingly, an employee must establish: (1) she engaged in protected activity; (2) she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the employer's adverse action. *Id*. (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003)).

Matrix contends that Muhammad cannot demonstrate a causal connection between her workers' compensation claim and any adverse action. (Def.'s Mem. at 17.) Plaintiff counters that she has created a genuine issue of material fact over the subject of causation because Defendant exhibited a pattern of animus towards Plaintiff and the timing of Matrix's actions are somewhat suggestive of retaliation. (Pl.'s Mem. at 17-18.)

A plaintiff may show causation in any of the following three manners: (1) by the timing of the adverse reaction in relation to the protected activity; (2) by a pattern of animus during the interval between the protected activity and the adverse action; or (3) through other circumstantial evidence concerning the employer's motivation, including inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees. *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009).

The record demonstrates that Matrix is entitled to summary judgment on this issue. For one, although Plaintiff states that she received a lot of pushback over her return date, it is undisputed that she was permitted to remain on leave until her doctor stated that she could return to work without restrictions. Plaintiff is also unable to point to any accommodations that she was denied. Finally, the timing between the workers' compensation claim in early December of 2018, and the adverse action in mid-March of 2019, is not unduly suggestive of retaliation. *See Santora v. Red Clay Consol. Sch. Dist.*, 580 F. App'x 59, 63 (3d Cir. 2014) ("We have held that a gap of even three months between events is too long to establish causation using temporal proximity."). The bottom line is that Muhammad has not produced any evidence "that connects the dots between her claim for workers' compensation and her termination." *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 278 (E.D. Pa. 2000).

## IV.    CONCLUSION

Because Muhammad has failed to raise a genuine issue of material fact on her discrimination claims and her retaliation claim, the Court will grant Defendant's summary judgment motion. An Order consistent with this Memorandum will be docketed separately.